# UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,                          CASE NO.:99-687-CR-UNGARO

vs.

JOSE JAIME BEJARANO,

      Defendant.

_____/

## DEFENDANT'S MOTION TO DISMISS THE INDICTMENT

Defendant, JOSE JAIME BEJARANO, pursuant to Doggett v. United States, 112 S.Ct. 2686, 505 U.S. 647, 120 L.Ed.2d 520 (1992), Barker v. Wingo, 92 S.Ct. 2182, 407 U.S. 514, 33 L.Ed. 2d 101 (1972), and the additional authorities set forth in the incorporated memorandum of law, requests that the Court dismiss the indictment based on the Government's violation of Mr. Bejarano's Sixth Amendment right to a speedy trial. Mr. Bejarano's Motion to Dismiss is based upon the following grounds:

1.    Mr. Bejarano is accused of conspiring to launder money and laundering money between June 23, 1998 and September 22, 1999. The Indictment was filed on September 22, 1999.

2.    Specifically Mr. Bejarano is accused of delivering $150,020.00 in cash to undercover agents on March 12, 1999.

3.    Mr. Bejarano was first arrested on May 3, 2005 when he was stopped for speeding by the Margate Police Department in Broward County, Florida, and arrested on an outstanding warrant for this case.

4.    On April 6, 1999, the Defendant and his wife were visited at their apartment in Broward County, Florida, by several agents of the Internal Revenue Service Criminal Investigation Division. The purpose of the visit was to attempt to have the Defendant cooperate with the agents regarding their pending investigation of money laundering activities. At the time of this meeting, the Defendant was not arrested.

CASE NO.:99-687-CR-UNGARO

5.    During that visit, the agents verified Mr. Bejarano's identity by inspecting and copying the information on his  Florida Driver's license and his Columbian passport.

6.    On September 22, 1999, the government filed the present indictment.

7.    During the time period covered by the indictment, and up until the present day, the Defendant has continuously lived in Broward and/or Palm Beach county, Florida.

8.    When his apartment lease expired some months after the agents visited their home on April 6, 1999, the Defendant and his wife moved to a nearby apartment complex in Broward County.

9.    The Defendant and his wife lived at that apartment complex until October, 2001, when they purchased a house at 6245 Willoughby Circle, Lake Worth, Florida 33463.

10.   The Defendant owned and lived in that house until August 14, 2003, when he purchased his current home located at 12210 N.W. 77th Manor, Parkland, Florida 33076. *Attached hereto as Exhibit "A" is a copy of the Warranty Deed.*

11.   The Defendant's name was always listed on the deeds and property tax records for each of those homes.  The Defendant's name and address was made available to the public and is listed on the Broward County Property Appraiser's website.

12.   From the time the indictment was filed until the present, the Defendant has owned and operated a business in Broward County.  Since December 6, 2000, the Defendant has been the principal director and the registered agent for Giro Xpress, Inc.  Since its inception, Giro Xpress, Inc. has been registered with the Florida Department of State, Division of Corporations.  In each of the annual filings with the state of Florida, the Defendant and his business address have always been listed. *Attached hereto as Exhibit "B" is a copy of the Florida Dept. of State, Division of Corporations Public Inquiry face sheet.*

CASE NO.:99-687-CR-UNGARO

13.   From the time period covered by the indictment up until the present, the Defendant has always filed both his personal and corporate federal income tax returns. *Attached hereto as Exhibit "C" are copies of the first page of the Defendant's personal income tax returns since 2002.*

14.   From the time period covered by the indictment up until the present, the Defendant has had automobiles titled in his name and registered with the State of Florida. *Attached hereto as Exhibit "D" is a copy of the title to the Defendant's automobile.*

15.   After the indictment was filed, the Defendant even traveled outside of the country for a few weeks and returned without incident. *Attached hereto as Exhibit "E" is a copy of Mr. Bejarano's Columbian Passport.*

16.   From the time period covered by the indictment and up until the present, the Defendant has always maintained a valid Florida Driver's license.

17.   From the time period covered by the indictment and up until the present, the Defendant has borrowed money from banks, bought two homes, financed two cars and has several credit cards. Based on those financial transactions, a simple credit check would have revealed his home or business address.

18.   At no time since the indictment was filed has the Defendant known that there were charges pending against him. He has owned property, conducted business, and lived openly the entire time since the indictment was filed.

19.   Since the indictment was filed on September 22, 1999, two of the co-defendants have pled guilty and been sentenced.

20.   The delay between the filing of the indictment and the Defendant's arrest is not attributable to the Defendant, but rather to the government's negligence in looking for him.

21.   The uncommonly long delay in arresting the Defendant has presumptively prejudiced Mr. Bejarano's ability to prepare an adequate defense.

CASE NO.:99-687-CR-UNGARO

WHEREFORE, Mr. Bejarano requests that this Court dismiss the indictment.

## MEMORANDUM OF LAW

In <u>Doggett v. United States</u>, 112 S.Ct. 2686, 505 U.S. 647, 120 L.Ed.2d 520 (1992), the Supreme Court overturned a defendant's conviction on the grounds that his Sixth Amendment right to a speedy trial was violated by the government's failure to arrest him until over eight years after his indictment was filed.   Factors relevant to determining whether such a post-indictment delay violates a defendant's Sixth Amendment rights include: whether the delay was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result. <u>Id.</u> at 2690.

Consideration of the factors set forth in <u>Doggett</u> requires the dismissal of the indictment against Mr. Bejarano. First, the five year, eight month delay between Mr. Bejarano's indictment and his arrest was "uncommonly long" and "presumptively prejudicial" within the meaning of the Sixth Amendment. <u>Doggett</u>, 112 S.Ct. at 2690-91 n.1, 2694 (post-accusation delay "presumptively prejudicial" as it approaches one year): <u>Matthews v. Lockhart</u>, 726 F.2d 394, 396 (8th Cir. 1984)(seventeen month post indictment delay presumptively prejudicial): <u>United States v. Greer</u>, 655 F.2d 51, 52-53 (5th Cir. 1981)(eleven-month delay triggered inquiry into <u>Barker</u> factors).

Furthermore, the Government is solely responsible for the post-indictment delay in this matter. Mr. Bejarano has continuously lived and worked in the Southern District of Florida since prior to the indictment being filed. Not only has Mr. Bejarano been listed as a director and registered agent of Giro Xpress, Inc. since 2000, he has also bought property, registered cars, borrowed money from banks, maintained a valid Florida Driver's license and otherwise lived openly since he was approached by agents on April 6, 1999. Had the government attempted to find him, it could have done so easily. A simple check of his Florida's driver's license, a credit report, or a visit to the Broward County Property Appraiser's website would have provided his home address.

CASE NO.:99-687-CR-UNGARO

Mr. Bejarano timely asserted his right to a speedy trial. Like Doggett, Mr. Bejarano was not aware of his indictment until his arrest. It was not until May 3, 2005, when Mr. Bejarano was stopped by the Margate Police Department for speeding that he learned that there was a federal warrant for his arrest. Once held by the Margate Police Department, he discovered that an indictment was filed against him on September 22, 1999. In fact, Mr. Bejarano had received prior traffic tickets in Broward County and was never told or advised of any outstanding federal warrants.

Lastly, the negligent delay between Mr. Bejarano's indictment and his arrest presumptively prejudiced his ability to prepare an adequate defense. The allegations which form the basis of the charge in the indictment against Mr. Bejarano occurred over six years ago (March 12, 1999). Since that time, two of the alleged co-conspirators have pled guilty, been sentenced and can no longer be found. Those individuals may posses information relevant to Mr. Bejarano's innocence.

Although a showing of actual prejudice is not necessary to warrant the dismissal of the indictment, Mr. Bejarano has been prejudiced by the Government's five year eight month post-indictment delay. Due to the Government's excessive delay in arresting Mr. Bejarano, it is extremely difficult to determine any other specific prejudice suffered by him. However, as the Supreme Court determined in Doggett, Mr. Bejarano's inability to specify his prejudice is not fatal to the dismissal of the indictment. In finding that the defendant's failure to cite any specifically demonstrable prejudice does not doom his claim, the Supreme Court reasoned that " ...excessive delay can compromise a trial's reliability in unidentifiable ways. Presumptive prejudice is part of the mix of relevant Barker factors and increases in importance with the length of the delay." Doggett, at 2688.

The Government's failure to have brought Mr. Bejarano promptly to trial appears to have resulted only from official neglect rather than bad faith. Regardless, the Government's failure to

CASE NO.:99-687-CR-UNGARO

have acted appropriately in this matter has resulted in prejudicial delay for the Defendant.  Mr.

Bejarano therefore requests that this Court dismiss the indictment with prejudice.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Defendant's Motion to Dismiss the

Indictment and supporting Memorandum of Law was hand-delivered to: Assistant United States

Attorney, Matthew S. Axelrod, Office of the United States Attorney, 8245 N.W. 53rd Street, Suite

101, Miami, Florida 33166, on this __25th__ day of July, 2005.

DONET, MCMILLAN & TRONTZ, P.A.
ATTORNEYS FOR DEFENDANT

By: _____
DAVID A. DONET, JR., ESQ.
FL BAR NO.: 128910
E-MAIL: donet@dmt-law.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

# CASE NO. 99-687-CR-UUB
# DE #143

☐   **DUE TO POOR QUALITY, THE ATTACHED DOCUMENT IS NOT SCANNED**

---

# ATTACHMENT(S) NOT SCANNED

☐ VOLUMINOUS (exceeds 999 pages = 4 inches)

☐ BOUND EXTRADITION PAPERS

☐ ADMINISTRATIVE RECORD (Social Security)

☐ ORIGINAL BANKRUPTCY TRANSCRIPT

☐ STATE COURT RECORD (Habeas Cases)

☐ SOUTHERN DISTRICT TRANSCRIPTS

☐ LEGAL SIZE

☐ DOUBLE SIDED

☐ PHOTOGRAPHS

☑ POOR QUALITY (e.g. light print, dark print, etc.)

☐ SURETY BOND (original or letter of undertaking)

☐ CD's, DVD's, VHS Tapes, Cassette Tapes

☐ OTHER = _____

# PLEASE REFER TO COURT FILE